IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DONALD R. ELIASON, and
RICHARD L. ELIASON,

                  Plaintiffs,                            OPINION AND ORDER

       v.

                                                      15-cv-833-wmc

GINA A. MOLGAARD, and
THE GINA A. MOLGAARD TRUST,

                  Defendants.

Plaintiffs Donald R. and Richard L. Eliason seek to enforce a promissory note against defendants Gina Molgaard and The Gina A. Molgaard Trust. (Dkt. #1.) Before the court is defendants' motion to dismiss for lack of subject matter jurisdiction and insufficient service of process. (Dkt. #9.) In the form of extensive briefing, dueling affidavits and cross-motions to strike, the parties' initial skirmish over jurisdiction and process has morphed into voluminous filings, creative legal arguments and red herrings. Unfortunately, this has all produced much heat with little light. Whether that is the result of a deliberate choice of counsel or just muddled reasoning remains to be seen, but on what remains (remarkably, given all the submissions by the parties) an incomplete record on the key issue before the court, all motions will be denied at this time for the reasons explained below and a status conference will be held with the parties to see if the record can be further developed with respect to Molgaard's current domicile.

BACKGROUND[1]

Plaintiffs Donald and Richard Eliason both reside in St. Germain, Wisconsin. (Dkt. #1.)  On or about Janurary 1, 2009, plaintiffs claim defendant Gina Molgaard executed an enforceable note to them, promising to repay by January 1, 2012, principal amount of $132,477.16, along with interest at the rate of 9% per annum.  Plaintiffs further claim that Molgaard, a longtime resident of and owner of a home in Watersmeet, Michigan, assigned her obligations under that note to her co-defendant, The Gina A. Molgaard Trust, on or about October 27, 2009.

While alleging that Gina Molgaard is a long-time resident of Watersmeet, Michigan, plaintiffs' now acknowledge that Marsha Lewis, the current trustee of the Molgaard Trust and holder of a Durable Power of Attorney for Healthcare executed by Molgaard in 2010, moved Molgaard to two assisted living facilities in Eagle River, Wisconsin, first to "Diane's Home of the Northwoods" on February 18, 2015, and then to "Milestone Senior Living" on August 24, 2015.  However, plaintiffs maintain that diversity of citizenship is satisfied because Molgaard is still legally domiciled in Michigan. Defendants, on the other hand, argue that Molgaard's physical move to Wisconsin defeats diversity.

In addition, the parties agree that a copy of the summons was served on Lewis at Molgaard's house in Watersmeet on January 21, 2016, though obviously not on Molgaard personally, since she was residing in Wisconsin by that time.  While plaintiffs

---

[1] The court derives the following facts from the parties' submissions, making note where the parties have identified factual disputes.

maintain this act satisfies service on both defendants under Rule 4(e), defendants argue that service was insufficient.

## MOTIONS TO STRIKE

Before deciding the motion to dismiss, the court will address the parties' respective motions to strike.  Under Rule 12(f), plaintiffs move to strike defendants' reply brief in support of their motion to dismiss, as well as the affidavits of Lawrence J. Wiesneske and Elmer L. Linboom, M.D.  (Dkt. #19.)  Not to be outdone, defendants not only oppose that motion on grounds that 12(f) applies to pleadings only, but move to strike select pages of plaintiffs' brief in support of their motion to strike, as well as the affidavit of Anne M. Plichta.  (Dkt. #24.)

### A.  Scope of Motions

Ignoring the irony of defendants themselves cross-moving to strike non-pleadings, defendants begin by asserting that the plain language of Rule 12(f) empowers this court to strike only matter "from a *pleading*."  Fed. R. Civ. P. 12(f) (emphasis added).  A number of courts have read this language strictly.  *See, e.g.*, *Vogt v. Raymond James Fin. Servs., Inc.*, No. 09-cv-83, 2009 WL 4667130, at *1 (E.D. Wis. Dec. 3, 2009) (acknowledging that generally speaking, neither a motion, nor a brief in support of a motion, is a candidate for Rule 12(f) review; *Hrubec v. Nat'l R.R. Passenger Corp.*, 829 F. Supp. 1502, 1506 (N.D. Ill. 1993) (discussing why the court would not strike a party's motion to strike and supporting memorandum under 12(f)).

On the other hand, courts have also invoked Rule 12(f) in striking matter outside the pleadings. *See, e.g.*, *McCorstin v. U.S. Dep't of Labor*, 630 F.2d 242, 243-44 (5th Cir. 1980) (finding no abuse of discretion in district court's striking of several, non-pleading documents); *Pigford v. Veneman*, 215 F.R.D. 2, 4, n.1 (D.D.C. 2003) ("Although Rule 12(f) applies by its terms only to 'pleadings,' courts occasionally have applied the Rule to filings other than those enumerated in Rule 7(a) of the Federal Rules of Civil Procedure."). Regardless of whether the parties' motions properly invoke Rule 12(f), the court will address their merits. *See* Fed. R. Civ. P. 1 ("[The Rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). The court hastens to add that the parties' unnecessarily elaborate motions to strike are good examples of why they are generally disfavored. *See Custom Vehicles, Inc. v. Forest River, Inc.*, 434 F.3d 725, 727 (7th Cir. 2006); *Heller Fin., Inc., v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

### B. Plaintiffs' motion

Plaintiffs argue in their motion that the court should strike defendants' reply brief in support of the motion to dismiss as untimely, and the affidavits of Lawrence Wiesneske and Elmer Linboom, M.D., as containing inadmissible hearsay and speculation. Taking the reply brief first, "[i]t is well settled that issues raised for the first time in a reply brief are deemed waived." *Nelson v. La Crosse Cty. Dist. Attorney*, 30I F.3d 820, 836 (7th Cir. 2002). Plaintiffs assert that defendants only argued in their opening brief that Ms. Molgaard was declared incompetent by two physicians, and therefore

4

Lewis was empowered under a Durable Power of Attorney for Healthcare to change her domicile, nor for the same reason was she served properly.  In contrast, plaintiffs assert that defendants make several *new* arguments in their reply brief, including that:  (1) various standards and time periods determine Molgaard's competency for purposes of determining her domicile and her competency to be served with process; (2) Molgaard's separate Durable Power of Attorney gave Lewis the express power to change her domicile; (3) Lewis's answer to a complaint in an unrelated case is irrelevant to this case; and (4) venue is inconvenient.

Certainly, defendants' passing objection to the inconvenient distance between this court and Vilas County was not raised before, nor was it prompted by any of plaintiffs' responsive arguments, but it is so undeveloped and meritless that there is no point in striking it.  Otherwise, all of the arguments contained in defendants' reply brief appear to at least respond to arguments raised by *plaintiffs'* response, including that:  (1) Molgaard was not incompetent for the purposes of service; (2) Molgaard's General Durable Power of Attorney expresses her intent to return home; and (3) Lewis's answer on behalf of Molgaard in an unrelated lawsuit agrees that Molgaard is still domiciled in Michigan.

In the end, plaintiffs' motion was largely, if not entirely, pointless.  As plaintiffs themselves acknowledge, the court can ignore "fat."  *See Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 821 (7th Cir. 2001); *see also Custom Vehicles*, 464 F.3d at 727 (refusing to strike an entire brief or to go line by line through the brief and act as an editor).  Regardless, having failed to demonstrate a need to strike any of defendants' reply brief, this court will deny plaintiffs' motion to strike it.

The court will also deny plaintiffs' motion to strike multiple affidavits filed by defendant. An affidavit or declaration offered to support or oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Accordingly, a court cannot consider declarations that are inadmissible or otherwise fail to satisfy Rule 56. *Adusumilli v. City of Chi.*, 164 F.3d 353, 359 (7th Cir. 1998). However, Mr. Linboom's affidavit is made up entirely of statements to which he either has personal knowledge or medical expertise. Mr. Wiesneske's affidavit is less clearly made up of declarations to which he has personal knowledge, but to the extent the objection is merely one of relevance, it is better addressed (or ignored) in the context of the pending motion to dismiss, rather than making what are likely wholly unnecessary objections in the abstract.

### C. Defendants' motion

Defendants also filed their own motion to strike portions of plaintiffs' brief in support of their motion to strike defendants' reply brief. Since the court has already denied plaintiffs' motion to strike, this motion will be denied as moot. Defendants' motion to strike an affidavit filed by plaintiffs will also be denied. Essentially, the affidavit is the original copy of the clearer, more legible copy of the General Durable Power of Attorney filed by defendants. Defendants are now moving to strike Plichta's affidavit as being redundant. This is yet another example of a pointless motion to strike, and it deserves no further consideration.

OPINION

## I.   Subject Matter Jurisdiction

As the party asserting federal jurisdiction, plaintiffs have the burden of proof. *Craig v. Ont. Corp.*, 543 F.3d 872, 876 (7th Cir. 2008).  "[A] proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sedowski*, 441 F.3d 536, 543 (7th Cir. 2006).  When a complaint is facially sufficient but the moving party calls the court's jurisdiction into question by pointing to external facts, "[t]he law is clear that . . . the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotation marks and citations omitted).

Plaintiffs actually allege that defendants are "residents" of Michigan.  (Compl. (dkt. #1) ¶ 3.)  Strictly speaking for an individual person (and the Seventh Circuit has repeatedly advised lower courts that we *are* speaking strictly), a plaintiff must allege the *domicile* rather than the residence of a party.  *See Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 867 (7th Cir. 2012) ("An allegation of residence is not sufficient to establish citizenship, which requires domicile.").  A person's domicile is "the state in which a person intends to live over the long run." *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012).  As such, a person may have several residences, but only one domicile. *Id*.

7

Similarly, in moving to dismiss this suit for lack of subject matter jurisdiction under Rule 12(b)(1), defendants originally argued that complete diversity between the parties does not exist because Molgaard now "resides" in Wisconsin, not Michigan. Even though both sides initially addressed residence, rather than domicile, the court will not dwell on this technical defect, since the focus of the parties' submissions shifted over the course of time to the correct one: the question of Molgaard's *domicile* at the time this lawsuit began, although sadly not in the clearest fashion.

Molgaard's domicile turns on two elements: (1) her physical presence or residence in a state; and (2) her intention to remain in the state. *Midwest Transit v. Hicks*, 79 F. App'x 205, 208 (7th Cir. 2003) (citing *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002)). Once a domicile is established, however, it continues until it is superseded by a new domicile. *See Sadat v. Mertes*, 615 F.2d 1176, 1181 (7th Cir. 1980). Even "a protracted absence from one's domicile does not establish a new domicile." *Gravdahl v. Conwell*, No. 00-C-0579, 2002 WL 398599, at *2 (N.D. Ill. Mar. 14, 2002) (*citing Seaboard Fin. Co. v. Davis*, 276 F. Supp. 507, 510 (N.D. Ill. 1967)).

Molgaard's physical presence at the time of suit is not in dispute. On the date plaintiffs filed their complaint in December of 2015, Molgaard resided in Wisconsin and had done so for some months. Whether Molgaard intended to remain in Wisconsin is a much closer question. As set forth above, Molgaard was moved on February 18, 2015, from Michigan to an assisted living facility in Wisconsin by Lewis, then again to another Wisconsin assisted living facility on August 24, 2015. The moves were at the instance of Lewis, under the authority of Molgaard's execution of a 2010 grant of a Durable Power

8

of Attorney for Healthcare and an April 16, 2015 General Durable Power of Attorney. Molgaard remains at this second facility.

Given Molgaard's longtime residence and established intent to remain in Michigan, there appears no dispute that Molgaard had been domiciled for decades in Watersmeet, Michigan, before her move to an assisted living facility in Wisconsin.  Given that Lewis made the decision to move Molgaard, and the fact that two physicians have declared Molgaard incompetent for the purposes of the Durable Power of Attorney for Healthcare (Aff. of Masha Lewis Ex. B (dkt. #11-2)), defendants also do not contend that Molgaard personally has, or even could form, the required intent to change her domicile to Wisconsin.   Instead, defendants argue that *Lewis* changed Molgaard's domicile from Michigan to Wisconsin under the authority afforded her by the two durable powers of attorney.  In support of this argument, defendants cite *Dakuras*, in which the Seventh Circuit held that a guardian can change his or her ward's domicile. 312 F.3d at 258.

In *Dakuras*, the Seventh Circuit was persuaded by the reasoning of the Tenth Circuit in *Rishell v. Jane Phillips Episcopal Memorial Medical Center*, 12 F.3d 171 (10th Cir. 1993), that "to prohibit . . . [guardians from changing the domicile of their wards] is to leave the incompetent in a never-ending limbo where the presumption against changing domicile becomes more important than the interests of the person the presumption was designed to protect." *Id.* at 174.

Defendants' reliance on *Dakuras* to support their argument that Lewis effectively changed Molgaard's domcile to Wisconsin is flawed on a number of levels.  To begin

with, a factual distinction between *Dakuras* and this case is that the individual ward in *Dakuras* had been declared legally incompetent by an Ohio court, and that court appointed the guardian. Defendants cite no authority, nor has the court been able to find any, that supports an expansion of the holding in *Dakuras* to encompass individuals who are not under control of a guardian, but instead have only assigned a power of attorney for healthcare. Arguably, the reasoning of *Dakuras* should apply even absent a court-appointed guardian under certain circumstances, but the distinction at least heightens the *Dakuras* court's concern with the underlying motives that may lie behind a guardian's decision to move an incompetent ward's location. *Id.* at 259; *see also Acridge v. Evangelical Lutheran Good Samaritan Soc'y,* 334 F.2d 444, 449 n.3 (5th Cir. 2003) (positing that *Rishell* and *Dakuras* may be distinguishable from other cases on the basis that they both "involved a court-appointed guardian with recognized legal capacity to act on behalf of the incompetent"); A. Upchurch, *Can Granny Have A New Home? Resolving the Dilemma of Dementia and Domicile in Federal Diversity Jurisdiction Cases,* 79 U. Colo. L. Rev. 545, 566-68 (Spring 2008) (discussing the *Dakuras* decision in context of larger issue of "domicile").

Here, the timeline of events on the current record is inconclusive at best regarding the motives behind Lewis's relatively recent relocation of Molgaard from her longstanding domicile in Michigan to two different assisted living facilities across the border in Wisconsin, while maintaining her Michigan residence. Molgaard signed the original Durable Power of Attorney for Healthcare on March 30, 2010. (Aff. of Marsha Lewis Ex. A (dkt. #11-1).) Much more recently, two physicians signed a declaration of

incapacity concerning Molgaard on February 2, 2015. (Aff. of Elmer L. Linboom Ex. A (dkt. #16-1).) A few weeks later, Lewis moved Molgaard to an Eagle River assisted living facility. Two months later, on April 16, 2015, Molgaard signed a General Durable Power of Attorney, which includes a statement of her express intention to return to her Michigan residence from any health care facility. (Aff. of Lawrence S. Wiesneske Ex. A (dkt. #15-1).) Lewis later moved Molgaard to another Eagle River assisted living facility on August 24, 2015. Finally, Lewis filed an answer on Molgaard's behalf in a state court case agreeing that Molgaard remained a Michigan resident on August 27, 2015. (Aff. of Anne M. Plichta Ex. A (dkt. #14-1).)

More important, the current record is devoid of facts concerning the reasons for Lewis's decision to move Molgaard to two assisted living facilities in Wisconsin, much less Lewis's *intent* in doing so. At this point, given the relatively recent dates of Molgaard's moves and the locations of the facilities, which Google Maps indicates are only approximately a 30-minute drive from her longstanding home in Watersmeet, Michigan and the lack of a sufficient explanation for them, defendants have not provided enough evidence to overcome the general presumption that once established, an individual's domicile is "presumed to continue" absent evidence that a new domicile has been established. *Mitchell v. United States*, 88 U.S. 350, 353 (1875); *see also Sadat*, 615 F.2d at 1181.

In fairness, defendants point out that the General Durable Power of Attorney here gives Lewis the authority to "establish a new residency or domicile for [Ms. Molgaard], from time to time and at any time, within or without the state, for such purposes as

11

[Lewis] shall deem appropriate."  (Aff. of Lawrence Wiesneske Ex. A (dkt. #15-1, ¶ 31.)) This, along with Molgaard being declared incapacitated by two physicians, arguably moves this case closer to *Dakuras*, but for two additional wrinkles:  (1) the General Durable Power of Attorney also expressly provides that Ms. Molgaard has an "intention to return to [her] residence from any hospital, hospice, nursing home, or other health care facility" (*id*. at § 6); and (2) Lewis's affidavit conspicuously fails to disavow that intention for reasons that are wholly unexplained.

Molgaard's domicile is not necessarily fixed for all time by virtue of her incompetence and unequivocal statement of intent in her General Durable Power of Attorney, but it is certainly strong evidence that both Molgaard *and* Lewis viewed any move to an assisted living facility as temporary and viewed her Michigan residence as her permanent home.  Moreover, while defendants offer a supplemental affidavit from an elder law expert, who explains that the quoted statement of intent is only present to insure that Molgaard will still enjoy a homestead exception, this explanation essentially *supports* a finding that Lewis desired *not* to affect the status of Molgaard's existing domicile in Michigan.  At least absent direct evidence that *Lewis* actually intended to change Molgaard's domicile in contravention of Molgaard's last stated intention, plaintiffs have met their burden of proof to show that this court has subject matter jurisdiction, or at least had it on the date suit was filed.[2]  Accordingly, the court will not dismiss for lack of subject matter jurisdiction on this record.

---

[2] Defendants argue that Lewis should also be considered a citizen of Wisconsin under 28 U.S.C. § 1332(c)(2) if Molgaard is a citizen of Wisconsin, which would thereby render the other defendant, The Gina A. Molgaard Trust, a Wisconsin citizen.  This reasoning seems to confuse

## II.   Service of Process

Defendants also move to dismiss this case for insufficient service of process under

Fed. R. Civ. P. 12(b)(5).[3]   Rule 4(e) sets forth the rules governing service of process on an

individual, allowing parties to accomplish service by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) Doing any of the following:
>
>> (A)      Delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B)      Leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C)      Delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

---

Lewis's role in acting for Molgaard as an individual from her status as trustee of the Molgaard Trust, but since plaintiffs have established that Molgaard is *not* a Wisconsin citizen for the reasons already explained, the defendant Trust remains a Michigan citizen for diversity purposes regardless.  *See Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006) ("The citizenship of a trust is that of the trustee.") (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980)).
[3] Defendants originally cited Rule 12(b)(2) in the motion to dismiss, purporting to assert dismissal for lack of personal jurisdiction.  However, after plaintiffs pointed out that the rule governing their motion is actually Rule 12(b)(5), defendants acknowledge their error.  Since both sides went on to brief the motion under Rule 12(b)(5), the court takes it up on that basis as well. *See Travel All Over the World, Inc., v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996) (a motion to dismiss should not be rejected merely because it fails to specify which particular rule it invokes).

Plaintiffs first argue that they satisfied Rule 4(e)(2)(B) by leaving a copy of the complaint and summons with Lewis at Molgaard's permanent Michigan residence, where Molgaard had, until relatively shortly before service, resided with Lewis.  Defendants argue that the Michigan residence was no longer Molgaard's "dwelling or usual place of abode" within the meaning of Fed. R. Civ. P. 4(e)(2)(B) at the time of service, given by that time Molgaard was living in Eagle River, Wisconsin, where she has remained since. The court is unsympathetic to this argument, given that Molgaard's home in Michigan is still her only meaningful, *permanent* dwelling, and viewed over the long haul at least, still her usual place of abode, especially since Molgaard continued to control this house through Lewis, who was after all residing there at the time of service.

If anything, the threshold for service of process on "the individual's dwelling" is lower than it is for assessing the individual's "domicile" for purposes of citizenship.  *See Minn. Mining & Mfg. Co. v. Kirkevold*, 87 F.R.D. 317, 324 (D. Minn. 1982) ("The purpose of using domicile as the basis for determining diversity, as opposed to broader concepts such as residence or usual place of abode, is consistent with the constitutional policy of limited jurisdiction . . . On the other hand, the concepts used in the rules governing service of process are utilized for the purpose of providing a likelihood of bringing actual notice to the intended recipient.  As such, different considerations are relevant, and it is simply not inconsistent under these circumstances to be domiciled in one state and also have one's 'usual place of abode' for purposes of service of process in another state.") (internal citations omitted).  Having already determined that plaintiffs have sufficiently established Molgaard's domicile remained at her permanent residence in Watersmeet,

14

Michigan, the court has little trouble finding that service of process on Lewis, as "someone of suitable age and discretion who resides there," is sufficient to satisfy Rule 4(e)(2)(B).[4]  *Id; see also* 4A Chalres Allen Wright & Arthur A. Miller, *Federal Practice and Procedure* § 1096 (4th ed. 2016) ("When the defendant has no permanent place of residence or is in the process of moving, the courts have considered the presence or absence of an intent to return to the place of service to determine whether it can be characterized as the defendant's dwelling house or usual place of abode.")[5]

Even if service of process were somehow defective, this court has discretion to determine whether to dismiss Gina Molgaard without prejudice or simply to quash service. Fed. R. Civ. P. 4(m) ("If defendant is not served within 120 days after the complaint is filed, the court ... must dismiss the action without prejudice against that defendant or order that service be made within a specified time."); *see also Cardenas v. City*

---

[4] Alternatively, plaintiffs argue that service was satisfied under Rule 4(e)(2)(C), since Lewis's General Durable Power of Attorney expressly authorized her to "commence, prosecute, defend or adjust clams and suits," and by implication at least authorizes Lewis to accept service for Molgaard.  However, an authorized agency under 4(e)(2)(B) arises solely through *actual, explicit authorization*, and not by implication.  See *Schultz v. Schultz*, 436 F.2d 635, 637 (7th Cir. 1971).  As in *Schultz*, the power of attorney at issue here authorizes Lewis to take certain specific legal actions, but does not give Lewis clear and unambiguous authority to accept service.  Accordingly, Lewis was not an agent authorized by law to accept service on Molgaard's behalf.  Similarly, Wisconsin law requires a principal to designate the agent to perform the function, job, or duty of accepting service (Wis. Stat. § 801.11(1)(d)), which means that the principal must establish an explicit agency agreement.  Since the General Durable Power of Attorney did not specifically authorize Lewis to receive service, it did not comply with Wisconsin law in satisfaction of Rule 4(e)(1).

[5] At the same time, if Molgaard was incompetent at the time of service, defendants failed to respond to plaintiffs' argument that service was proper under *Michigan* law, thus waiving any argument to the contrary.  Accordingly, service would still be proper under Rule 4(g).  *See* Fed. R. Civ. P. 4(g) ("A minor or incompetent person in a judicial district of the United States must be served by following state law for serving a summons or like process on such a defendant in an action brought in the courts of general jurisdiction *of the state where service is made*") (emphasis added).

15

*of Chi.*, 646 F.3d 1001, 1005 (7th Cir. 2011) ("[T]he decision of whether to dismiss or extend the period for service is inherently discretionary.").  "[D]istrict courts should consider the relative hardships of the parties in arriving at [their] discretionary choice between dismissal and extension of time."  *Cardenas*, 646 F.3d at 1006.  Given the equities here, particularly that formal service on Molgaard individually would be virtually a meaningless gesture while service on Lewis was exactly the right person to receive notice, the court grants leave, but does not require, plaintiffs to more perfectly accomplish service on or before September 9, 2016, on Molgaard's duly appointed *guardian ad litem* under Wis. Stat. § 803.01, as defendants maintain is required by § 801.11(2)(b).

ORDER

IT IS ORDERED that:

(1) defendants' motion to dismiss (dkt. #9) is DENIED;

(2) plaintiffs' motion to strike (dkt. #19) is DENIED;

(3) defendants' motions to strike (dkt. #24) and to file supplemental affidavits (dkts. ##22, 26) are DENIED AS MOOT;

(4) defendants' motion for extension of time to file amendments to their pleadings (dkt. #30) is DENIED, however, either party may seek leave to amend if necessary;

(5) plaintiffs may, but are not required, to again serve Gina A. Molgaard through her duly appointed *guardian ad litem* on or before September 9, 2016; and

16

(6) a telephonic status conference to consider whether it is necessary to further develop the record with respect to subject matter jurisdiction will be held on June 24, 2016, at 10:00 a.m., plaintiffs' counsel to initiate the conference call to the court.

Entered this 9th day of June, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge